# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THE NATIONAL CENTER FOR GENOME
RESOURCES, a New Mexico non-profit
corporation,

        Plaintiff,

        vs.                                                                                      No. CIV 99-0679 JC/KBM

THE PERKIN-ELMER CORPORATION,
a New York corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion to Dismiss Count IV of Defendant/Counterclaimant's (Defendant) First Amended Counterclaim, filed February 22, 2000 *(Doc. 47)*. Plaintiff moves pursuant to FED. R. CIV. P. 12(b)(6) to dismiss Defendant's fourth counterclaim which alleges a violation of the New Mexico Securities Act of 1986.

**A.**     **Background**

In November 1997, the parties entered into a stock and asset purchase agreement (purchase agreement) whereby Defendant agreed to 1) pay $41,233,017 to purchase Plaintiff's performance as specified in the agreement, and 2) buy out MDL's exclusive right to distribute the biomerge product in certain markets for $9,000,000, which amount was substantially funded by Defendant. Answer to Complaint for Declaratory Relief and First Amended Counterclaim (Amended Counterclaim) at ¶ 16, filed Nov. 30, 1999 *(Doc. 29)*. Pursuant to § 3.11 of the purchase agreement, Plaintiff provided Defendant with specific financial statements of Molecular Informatics, Inc. (MII), a corporation

whose stock was owned by Plaintiff. *Id*. at ¶ 17. Those financial statements included a September 1997 interim balance sheet. *Id*. Section 3.15 of the purchase agreement indicated that as of September 30, 1997 there had not been any material adverse changes at MII with respect to its finances and operation. *Id*. at 19.

> Defendant alleges that in fact the Plaintiff failed to disclose that
>
> i) as of at least November 1997, MII believed that it 'did not have a product which people want to buy' in biomerge;
>
> ii) MII did not think that MDL would achieve the sales revenues as provided to [Defendant];
>
> iii) it did not have the important relations with the biomerge customers which it represented, and which were necessary to continue the product development of biomerge;
>
> iv) it had made key decisions in its operations to reallocate its product and technology development resources; and,
>
> v) it had demoted its key employee, the vice-president of business development, due to perceived performance deficiencies regarding sales.

*Id*. at ¶ 21. Consequently, Defendant contends that the stock and asset purchase price was substantially higher than it should have been and Plaintiff violated NMSA 1978, § 58-13B-30 (1986), which prohibits securities fraud.

### B. Should this Motion to Dismiss be Treated as a Motion for Summary Judgment?

The first issue in deciding this motion to dismiss is whether the motion to dismiss should be treated as a motion for summary judgment. FED. R. CIV. P. 12(b) states that if "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment. . . ." However, "if a plaintiff does not incorporate by reference or attach

a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The district court has discretion whether to consider such materials. *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir.), *cert. denied*, 120 S. Ct. 405 (1999).

In this case, Plaintiff attached to its memorandum in support of the motion to dismiss a copy of MII's September 1997 interim balance sheet, and Defendant attached several documents from outside the pleadings to its response brief. *See* Exhibit 1 (attached to Memorandum of Points and Authorities in Support of Plaintiff/Counterdefendant's Motion to Dismiss Count IV of Defendant/Counterclaimant's First Amended Counterclaim, filed Feb. 22, 2000 *(Doc. 48)*); Exhibits 10 through 14 (attached to Perkin-Elmer's Brief Opposing NCGR's Motion to Dismiss Count IV, filed Feb. 22, 2000 *(Doc. 49)*). The September 1997 interim balance sheet is referred to in Defendant's Amended Counterclaim. This document is central to Defendant's claim that Plaintiff overvalued MDL's projected sales revenues of the biomerge product. I will, therefore, consider the September 1997 interim balance sheet.[1] I will, however, not consider Defendant's exhibits. Accordingly, I will treat this motion as a motion to dismiss, not a motion for summary judgment.

**C.     Rule 12(b)(6) Standard**

A court will grant a motion to dismiss under Rule 12(b)(6) only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.

---

[1] I previously considered the purchase agreement when addressing Plaintiff's Motion to Dismiss and Strike Defendant's Counterclaim, filed October 20, 1999 *(Doc. 19)*, and will continue to consider it in this motion to dismiss because of its reference in the Amended Counterclaim and its central importance to this case. *See* Memorandum Opinion and Order, filed Dec. 9, 1999 *(Doc. 34)*.

*Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). All well-pleaded allegations are accepted as true, and all reasonable inferences are construed in favor of the plaintiff. *Id.*

**D.     Discussion**

The provision of the New Mexico securities law which is relevant to the fourth counterclaim is NMSA 1978, § 58-13B-30. Section 58-13B-30 states that

> In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:
> A.  employ any device, scheme or artifice to defraud;
> B. make an untrue statement of a material fact or fail to state a necessary material fact where such an omission would be misleading; or
> C.  engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

However, a person who sells a security in violation of § 58-13B-30(B) is not liable for civil damages "if the purchaser knew that a statement of a material fact was untrue or that there was an omission of a statement of a material fact." NMSA 1978, § 58-13B-40(B) (1986). Moreover, "[t]he intent with which the [seller] makes the [fraudulent] statement is irrelevant under the terms of the statute. The statute requires only that the statement made be false and material, or that the omission be of a material fact necessary to make true the statement made." *Treider v. Doherty & Co.*, 86 N.M. 735, 737, 527 P.2d 498, 500 (Ct. App.), *cert. denied*, 86 N.M. 730, 527 P.2d 493 (1974) (decided under similar former law).

Defendant's fourth counterclaim alleges that Plaintiff breached its duty under the New Mexico securities law to "avoid making untrue statements of fact and to disclose all material facts to [Defendant] . . . by directly and indirectly employing a device, scheme and/or artifice to defraud [Defendant] and by making untrue statements of material fact and by failing to disclose material facts and information to its buyer." Amended Counterclaim at ¶¶ 48, 49. The fourth counterclaim also

alleges that Defendant "was unaware that [Plaintiff] had provided [Defendant] with materially false information and was unaware that [Plaintiff] failed to disclose material information concerning MII." *Id*. at ¶ 50. The fourth counterclaim concludes that Plaintiff misled Defendant. *Id*. at ¶ 51.

On its face, the fourth counterclaim when read in conjunction with the alleged facts at ¶¶ 1-21 of the Amended Counterclaim sets forth a cognizable claim under § 58-13B-30 of the New Mexico securities law. Plaintiff argues, however, that the fourth counterclaim fails to state a cognizable claim for three reasons: "(1) the Merger Clause in the Purchase Agreement prohibits the additional representations allegedly relied upon by the [defendant]; (2) the September 30, 1997 Interim Balance Sheet is not an actionable representation; and (3) [Defendant's] claim for violations of the [New Mexico securities law] is barred by its own knowledge of the applicable facts." Reply in Support of Plaintiff's Motion to Dismiss Count IV of Defendant/Counterclaimant's First Amended Counterclaim at 5, filed Feb. 22, 2000 *(Doc. 50)*.

    1.    The Purchase Agreement's Merger Clause

The merger clause at issue is found at § 8.2 of the purchase agreement and provides in pertinent part:

> This Agreement, including all Exhibits and Schedules referred to herein or delivered pursuant hereto, contains the entire understanding of the parties hereto with respect to its subject matter. There are no representations, promises, warranties, covenants, or undertakings other than expressly set forth herein or therein. This Agreement supersedes all prior agreements and understandings between the parties hereto with respect to its subject matter.

The Court notes that any merger clause in a stock and asset purchase agreement must be read in light of the New Mexico securities law section which states that "[a] provision in a contract entered into or effective in this state, binding a person acquiring a security to waive compliance with the

New Mexico Securities Act of 1986 or a rule or order of the director under that act is unenforceable." NMSA 1978, § 58-13B-55(B) (1986). This antiwaiver provision is analogous to the antiwaiver provision of the federal Securities Exchange Act, 15 U.S.C. §78cc(a).[2] The court in *Harsco Corp. v. Segui*, 91 F.3d 337 (2nd Cir. 1996), found that the underlying concern of § 78cc(a) is "'whether the agreement weakens [the] ability to recover under the Exchange Act.'" *Id.* at 343 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 230 (1987)).

As in *Harsco*, there is no question that the purchase agreement's merger clause weakens the Defendant's ability to recover under the New Mexico securities law. However, such a "weakening" may not necessarily constitute a forbidden waiver of compliance under the circumstances of a particular case. *Id*. To be a forbidden waiver of compliance there must be a disparity in bargaining power between the parties so that one could conclude that the party asserting a violation of the securities law was "duped into waiving the protections of the securities laws." *Id*. at 344. The question of whether there is a forbidden waiver of compliance is one of degree and context. *Id*.

Nothing in the Amended Counterclaim and purchase agreement indicates that the parties in this case were not sophisticated business entities negotiating at arm's length or that relative bargaining parity was not present. Furthermore, specific disclosures and representations were made via the 1996 annual financial statements and the September 1997 interim balance sheets. Purchase Agreement at § 3.11. This is not a case where there is "but one vague seller's representation." *Harsco*, 91 F.3d at 344. In fact, a close inspection of the September 1997 interim balance sheet would have revealed substantially low sales of the biomerge product for the first three quarters compared to the projected

---

[2] "Federal authority on federal statutes similar to state law is persuasive in New Mexico." *State v. McCall*, 101 N.M. 616, 627, 686 P.2d 958, 969 (Ct. App. 1983), *reversed on other grounds*, 101 N.M. 32, 677 P.2d 1068 (1984) (citing *State v. Weddle*, 77 N.M. 420, 423 P.2d 611 (1967)).

annual sales and alerted Defendant to conduct further investigations into the state of MII's business. Exhibit 1 (attached to Plaintiff's Memorandum). Additionally, Defendant makes no allegation that it did not have an opportunity to engage in due diligence to confirm the accuracy of MII's financial disclosures or to investigate the state of MII's business practices and organization. In sum, there is nothing in the Amended Counterclaim or the purchase agreement that demonstrates that Defendant "was duped into waiving the protections of the securities laws." Consequently, the merger clause does not constitute a forbidden waiver of compliance with the New Mexico securities law. The merger clause, therefore, bars Defendant's claim under the New Mexico securities laws.

2. Is the September 1997 interim balance sheet an actionable representation?

Plaintiff argues next that the September 1997 interim balance sheet fails to provide a basis for a claim of violation of the New Mexico securities law because the "Total Budget" numbers are not an affirmative guarantee of the projected sales of the biomerge product. Forward-looking representations may be considered material misrepresentations when such statements are not accompanied by specific risk disclosures or other cautionary statements to nullify any potentially misleading effect. *See Grossman*, 120 F.3d at 1120 (discussion of "bespeaks caution" doctrine). However, "[a] statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *Id.* at 1119 (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Additionally, "[w]hether information is material also depends on other information already available to the market; unless the statement 'significantly altered the "total mix" of information' available, it will not be considered material." *Id*.

Here, there are no allegations of risk disclosures or other cautionary statements with respect to the September 1997 interim balance sheet. However, a reasonable investor would give little

credence to the projected 1997 sales figure after seeing the actual sales for the first three quarters of 1997. Moreover, the September 1997 projected sales figure does not significantly alter the total mix of information when one also considers the actual sales for the first three quarters of 1997. The September 1997 interim balance sheet, therefore, does not constitute a material misrepresentation and should not be a basis for the Defendant's securities fraud claim.

> 3. Is the Defendant's claim for violations of the New Mexico
> securities law barred by its own knowledge of the applicable facts?

Section 58-13B-40(B) states that there is no civil liability under the New Mexico securities law if the purchaser of a security knew that a statement or omission of a statement of material fact was untrue. Plaintiff asserts that by reading both the purchase agreement and the September 1997 interim balance sheet, Defendant knew that MDL could not meet the projected sales figures by the end of 1997. Specifically, Plaintiff contends that by September 1997, MDL had achieved only 5% of the total budgeted sales for that year and pursuant to the purchase agreement, MDL was terminating its license to sell the biomerge product. These facts were known to Defendant at the time the purchase agreement was signed and so Defendant must have known that MDL could not meet the projected sales by the end of 1997. Since Defendant knew that the sales projections could not be met and failure to meet those projections would adversely affect the value of the stocks and assets, it cannot now assert civil liability on the part of Plaintiff for securities fraud. Consequently, Defendant fails to state a claim of securities fraud under New Mexico law.

**D. Conclusion**

Plaintiff's motion to dismiss the New Mexico securities law claim should be granted for three reasons. First, the merger clause in the purchase agreement bars a securities law claim. Second, the

September 1997 balance sheet cannot be an independent basis for asserting a securities fraud claim. Third, Defendant knew at the time the purchase agreement was signed that MDL could not fulfill its projected sales by the end of 1997, thereby adversely affecting the value of the stocks and assets Defendant wished to purchase.

Wherefore,

IT IS ORDERED that Plaintiff's Motion to Dismiss Count IV of Defendant's First Amended Counterclaim, filed February 22, 2000 *(Doc. 47)*, is **granted**, and Count IV of Defendant's First Amended Counterclaim is **dismissed** with prejudice.

DATED this 28th day of March, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:	Jeffrey A. Rossman
	Mark McKeen
	Robeck, Phleger & Harrison
	San Francisco, California

	Kathryn D. Lucero
	Foster•Johnson•McDonald•Lucero•Koinis
	Albuquerque, New Mexico

Counsel for Defendant:	Geoffrey D. Rieder
	Wayne R. Suggett
	Silva, Rieder & Maestas
	Albuquerque, New Mexico